Case: 1:13-mj-0620
Assigned To : Magistrate Judge Alan Kay
Assign. Date : 08/10/2013
Description: Criminal Complaint

**FILED**

**AUG 1 0 2013**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## STATEMENT OF FACTS

Between on or about August 2012, through August 9, 2013, law enforcement has conducted an investigation into Herman Curtis Malone and Micah Jerry Bidgell and their narcotics operation. Specifically, through a cooperating source, (CS-1), law enforcement has conducted multiple controlled narcotics purchases beginning in August 2012.[1]

For example, on August 23, 2012, at the direction of law enforcement, CS-1 went to the ███████████████████████████████ CS-1 met with Bidgell and stated that it wanted to purchase 50 grams of heroin. Bidgell informed CS-1 that he only had 30 grams and would need to obtain more. The two agreed to meet later. Bidgell then called CS-1 and arranged to meet the next day. On August 24, 2012, at the direction of law enforcement, CS-1 spoke with Bidgell and arranged to conduct a narcotics transaction. Law enforcement provided CS-1 with $4250.00. CS-1 went to the area of ████████████████████ to meet Bidgell. CS-1 arrived in the ████████████████████ where he observed Bidgell sitting at a picnic table with an unknown male. The unknown male walked toward CS-1 and entered the passenger side of the car. CS-1 then provided the money to the unknown male who gave CS-1 approximately 50 grams of heroin. CS-1 observed the unknown male walk back toward Bidgell.

On September 10, 2012, CS-1 contacted Bidgell and told him ". . . same as last time and the other thing." Bidgell agreed and the two agreed to meet the next day to complete the planned purchase of 50 grams of heroin. On September 11, 2012, Bidgell and CS-1 agreed to meet at ████████████████████████████ Before CS-1 arrived at the location, Bidgell, called and advised CS-1 that an individual in a green Nissan Pathfinder would be supplying it with heroin. Members of law enforcement observed CS-1 enter the parking lot and back its vehicle next to the green Pathfinder. They also observed Bidgell signaling the driver of the Pathfinder to enter CS-1's vehicle. At that time a black male was observed exiting the green Pathfinder and entering CS-1's vehicle. Inside the vehicle the black male exchanged 51.4 grams of heroin with CS-1 for $4250.

On September 19, 2012, CS-1 called Bidgell and said, "I'm a try and see you tomorrow,

---

[1] For over two years, CS-1 has provided to members of law enforcement information which included specific details regarding drug trafficking in the District of Columbia and Maryland. CS-1 has also assisted in the controlled purchase of narcotics. CS-1 is presently awaiting sentencing for a felony narcotics offense and is cooperating with law enforcement pursuant to a cooperation plea agreement. In addition to that case, CS-1 has two prior felony convictions. The information provided by CS-1 to me and other law enforcement officers has been determined to be reliable. To the best of my knowledge, CS-1 has never provided false information to law enforcement in the course of this investigation. Please note, however, that on or about December 19, 2012, a defendant in a separate case told law enforcement officers that CS-1 had supplied him with cocaine. We investigated this allegation, but found no evidence to corroborate the allegation. In addition, CS-1 has recently tested positive for cocaine, and also apparently removed a "skin patch" test device without permission. At that time, CS-1 reportedly denied drug use and maintained that the positive results were from touching cocaine. In June 2013, CS-1, through counsel at a sealed hearing on violation of conditions of release, admitted to using cocaine. The parties recommended that CS-1 be drug tested and placed in treatment if necessary. The court directed CS-1 to drug test as directed by pretrial services, and warned CS-1 that any additional violations will result in revocation of CS-1's release. Prior to this hearing, CS-1 told the DEA that it was handling cocaine in order to do some work to get to a new target, and the cocaine was "wet," and that is how CS-1 had tested positive. (The DEA did not authorize any such "work."). After the hearing, CS-1 claimed it was trying to get with a woman who had cocaine on her and wanted CS-1 to use it, and that CS-1 thought it could find out who her supplier was.

the same." Bidgell replied, "OK, I will hit you soon as I come up." On September 20, 2012, CS-1 was directed by Bidgell to another restaurant in the area of the Popeye's Chicken near 6200 Central Avenue. Law enforcement officers observed CS-1 enter the restaurant and leave a short time later. They also observed Bidgell and another male exit the restaurant and enter Bidgell's vehicle and depart the area. While inside the restaurant, Bidgell directed CS-1 to a bag sitting on a table. Bidgell also directed CS-1 to give the money to the male. CS-1 returned to law enforcement and provided approximately 50 grams of heroin.

On January 10, 2013, CS-1 arranged with Bidgell to meet to conduct a narcotics sale the next day. On January 11, 2013, CS-1 was provided $8500.00 in prerecorded funds. Bidgell called CS-1 and directed CS-1 to meet him at the "old" McDonalds restaurant on Marlboro Pike. At approximately 5:10 PM members of law enforcement conducted surveillance around the Hilltop Motors and McDonalds restaurant. At that time BIDGELL's Toyota pickup truck was observed parked in the Hilltop Motor's parking lot. Bidgell then directed CS-1 to come to the "used tire joint" next to the McDonalds. CS-1 parked in this lot. Law enforcement observed Bidgell exit Hilltop motors and enter CS-1's vehicle. Bidgell gave CS-1 approximately 100 grams of heroin in exchange CS-1 gave Bidgell $8500.00 in prerecorded funds.

As a result of the controlled purchases, law enforcement obtained authorization to intercept communication on several of Bidgell's telephones. As a result of those interceptions, as well as other investigation, law enforcement identified Herman Curtis Malone, as Bidgell's narcotics supplier.

For example, on January 28, 2013, Bidgell sent a text to CS-1 that read, "hey homz…just got back in town and I picked up them new nike that came out and they mean halla at me if u need a pair cuz my man got one he cant fit . . ." On Tuesday January 29, 2013, CS-1 replied to Bidgell by texting "What kind of nike you talking about the ones i was getting from you or the ones i asked about that your man . . ." Bidgell then sent a text that read, "Both of em….the one u b getting is mean tho… u be bullshitting man." Based on my training and experience in this and other cases, I believe that CS-1 was asking, in coded language, whether Bidgell was referring to heroin or cocaine. At 6:32 p.m., CS-1 replied, via text message, "Whats your man numbers for a whole pair." At approximately 6:33 p.m., Bidgell sent a text to CS-1 that read, "I.ll call em now and ask." Based on my training and experience, I understand that CS-1 was asking Bidgell for the price of one kilo of cocaine. Bidgell said he would check with his supplier.

At approximately 7:04 p.m., Bidgell called Malone and said, "Yeah, I just wanted to holler at you about something, before you . . . put a bug in your ear." Malone said, "Okay, you around the way?" Bidgell said that he was and Malone said "okay." At approximately 7:45 p.m., a law enforcement officer who is assisting in this investigation observed Malone's vehicle, parked next to Bidgell's Toyota Tundra in the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Thereafter, at approximately 7:51 p.m, Bidgell sent a text message to the CS-1 that read, "size 42 pants." Based on my training and experience in this and other cases, I believe Malone and Bidgell had discussed the price of cocaine and that, after speaking with Malone, Bidgell informed CS-1 that a kilo of cocaine would cost $42,000.

After identifying Malone as Bidgell's supplier, law enforcement obtained authorization to intercept communications on Malone's telephone. On August 9, 2013, law enforcement intercepted communications between Malone and a narcotics customer identified as Stephen Williams. Williams arranged to meet Malone at Malone's residence in ▮▮▮▮▮ ▮▮▮▮▮ Law enforcement observed Williams enter Malone's house and leave with a black bag in his hand that he placed in the trunk of his car. After Williams drove away from Malone's house law enforcement conducted a traffic stop. Inside Williams' vehicle law enforcement recovered approximately one kilogram of suspected cocaine that was inside a black bag in the trunk of his car. A portion of the suspected cocaine field tested positive for cocaine. Immediately after Williams was stopped, Malone was contacted by Williams' mother and informed about the stop. Law enforcement observed Malone leave his residence and drive to ▮▮▮▮▮ Law enforcement then observed Malone meet with Bidgell.

Following the arrest of Williams, members of law enforcement executed a search warrant at William's residence located at ▮▮▮▮▮ During the search of this residence law enforcement recovered a quantity of suspected heroin and suspected cocaine. A portion of the suspected heroin field tested positive for heroin. A portion of the suspected cocaine field tested positive for cocaine. Also seized from William's residence was a firearm.

On August 9, 2013, law enforcement executed a search warrant at Malone's residence located in ▮▮▮▮▮ and recovered one kilogram of suspected cocaine, approximately 100 grams of suspected heroin and one .40 caliber semiautomatic handgun. Also recovered from Malone's residence was assorted paraphernalia associated with the distribution of controlled substances. A portion of the suspected heroin field tested positive for heroin. A portion of the suspected cocaine field tested positive for cocaine.

On August 9, 2013 at approximately 2043 hours law enforcement located Malone in Northeast, Washington D.C. Malone was arrested and transported to the 6th District for processing.

_____
Special Agent Nicholas Singer

Sworn and Subscribed before me on this _10_ day of August, 2013.

_____
Alan Kay
United States Magistrate Judge